FILED
2026 Apr-15  AM 11:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **CATHEISA HOLMAN,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 7:24-cv-836-ACA** |
| | ] | |
| **MICHAEL PATE, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

On several occasions Defendant Michael Pate, a police officer with the City of Brent, arrested or threatened to arrest Plaintiff Catheisa Holman. Believing these interactions violated her constitutional rights, Ms. Holman filed this lawsuit against Officer Pate and Defendants Mayor Bobbie White[1] and City of Brent. Ms. Holman's complaint alleges three claims: violations of her Fourth Amendment rights by Officer Pate ("Count One"); violations of her First Amendment rights by Officer Pate ("Count Two"); and violations of her Fourth Amendment rights by Mayor White and the City of Brent ("Count Three").

The defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 38). For the reasons below, the court **WILL GRANT** the

---

[1] Although the amended complaint and motion to dismiss spell Mayor White's name as "Bobby" (*see* doc. 37; doc. 38), most documents filed on Mayor White's behalf spell her name as "Bobbie" (doc. 7; doc. 13; doc. 14; doc. 15). Accordingly, the court follows her preferred spelling.

defendants' motion and **WILL DISMISS** this case **WITH PREJUDICE**. (*Id.*). The court **FINDS AS MOOT** the motion to the extent it seeks to dismiss an outrage claim.

## I.   BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Ms. Holman's claims flow from multiple interactions with Officer Pate. In September 2022, when Ms. Holman saw Officer Pate searching a relative's car, she pulled over, stopped her car, and got out. (Doc. 37 ¶ 1). When she stepped out of her car, Officer Pate ordered her to return to her car. (*Id.*). After she refused, Officer Pate arrested her and charged her with obstruction of governmental operations and resisting arrest. (*Id.*). Ms. Holman was later acquitted. (*Id.*).[2]

Roughly four months later, Ms. Holman tried to retrieve her car, which her daughter had driven. (Doc. 37 ¶ 2). When Ms. Holman arrived, Officer Pate again ordered her to return to her car. (*Id.*). Ms. Holman refused, and Officer Pate

---

[2] Ms. Holman's amended complaint also references an arrest on September 9, 2024. (Doc. 37 ¶ 10). But this appears to be a typographical error referring to the September 9, 2022 arrest. In addition to the similar factual allegations and the same date, Ms. Holman's complaint alleges she was arrested only in September 2022, not September 2024. (*See id.* ¶ 17).

instructed another officer to arrest her. (*Id.*). Although she was handcuffed and placed in a police car, the officers released Ms. Holman after they searched her. (*Id.*).

In February 2024, Ms. Holman went to the City of Brent's police headquarters to "discuss a matter with another officer." (Doc. 37 ¶ 12). At the police station, Officer Pate threatened to arrest Ms. Holman if she did not get out of her car and provide a form of identification. (*Id.*). Four months later, Officer Pate ordered Ms. Holman to leave a public parking lot. (*Id.* ¶ 11).

In August 2024, a police officer initiated a traffic stop involving Ms. Holman's son. (*Id.* ¶ 3). Ms. Holman approached the tow truck driver to pay her son's charges. (Doc. 37 ¶ 3). Officer Pate arrested Ms. Holman for speaking to the driver. (*Id.*).

Each time Officer Pate formally arrested Ms. Holman, he filed a citation with the City of Brent's municipal court. (*Id.* ¶ 16). Additionally, some Brent citizens have petitioned the City and Mayor White to remove Officer Pate from his position as a police officer. (*Id.*; doc. 37-1).

## II.    DISCUSSION

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1.    Officer Pate

Ms. Holman brings two claims against Officer Pate. Count One alleges that he violated the Fourth Amendment by falsely arresting her on three separate occasions. (Doc. 37 ¶¶ 1–3, 6). Count Two alleges that he violated the First Amendment because he (1) arrested her after she arrived at a traffic stop, (2) ordered her to leave a public parking lot, and (3) threatened to arrest her at the police station if she did not get out of her vehicle and provide identification. (*Id.* ¶¶ 10–12). Officer Pate argues he is entitled to qualified immunity for both claims against him in his individual capacity. (Doc. 38 at 6–12).

Qualified immunity protects all government officials except those who are plainly incompetent or knowingly violate federal law from the duty of defending their actions and liability. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

A government official who asserts qualified immunity bears the initial burden of "proving that he was acting within his [discretionary] authority." *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Officer Pate satisfies

this burden by establishing that plaintiff's alleged constitutional injury occurred while he was: (1) doing the type of action that fell within his general job responsibilities; and (2) within the scope of his authority. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004); *see also Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025).

To satisfy the first prong, Officer Pate does not have to establish that he committed the act for a constitutional purpose, in a constitutional manner, to a constitutional extent, or under constitutionally appropriate circumstances. *Holloman*, 370 F.3d at 1266. Nor does Officer Pate have to establish that he was specifically authorized to do the exact thing he was doing at the time the injury allegedly occurred. *See id.* So long as he was doing something that, if done for a proper purpose, "would be within, or reasonably related to, the outer perimeter" of his discretionary duties, he sustains his burden for that prong. *Donald*, 131 F.4th at 1264 (quotation marks omitted). And to satisfy the second, Officer Pate need only establish that the State of Alabama authorized him to perform the duty. *Cummings,* 906 F.3d at 940; *see also Harbert Int'l*, 157 F.3d at 1283; *Lenz v. Wibburn,* 51 F.3d 1540, 154647 (11th Cir. 1995).

Officer Pate identifies the statutory authority establishing his duty as a peace officer and cites the allegations within the amended complaint to establish he was

acting within his powers when the alleged injury occurred.  (Doc. 38 at 7–8). This satisfies Officer Pate's burden of production. *See Donald*, 131 F.4th at 1264. Ms. Holman does not dispute that Officer Pate was acting within his discretionary authority. (*See* doc. 40). So the burden shifts to Ms. Holman to show that Officer Pate violated her clearly established constitutional rights. *See Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022).

Ms. Holman can use three methods to satisfy that burden. *Id.* at 920–21. First, she may point to a materially similar decision from the Eleventh Circuit, United States Supreme Court, or the Alabama Supreme Court. *Id.* at 920. Second, she may point to "a broader, clearly established principle [that] should control the novel facts" of the case. *Id.* Third, she may argue that Officer Pate's actions "so obviously violate[] the constitution that prior case law is unnecessary." *Powell*, 25 F.4th at 920 (quotation marks accepted) (alteration omitted). As explained below, Ms. Holman has not met her burden.

### i.   *Count One*

Generally, an officer needs at least probable cause to carry out a warrantless arrest. *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). But to be entitled to qualified immunity in the false arrest context, Officer Pate needs only "arguable probable cause," meaning "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable

cause existed to arrest." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998); *see also Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (noting that "arguable probable cause is a useful shorthand to collapse" the three methods of demonstrating a clearly established violation into a single question) (quotation marks omitted).

Ms. Holman maintains that Officer Pate did not have arguable probable cause because "[t]here are no facts to suggest plaintiff was conducting or about to engage in criminal activity." (Doc. 40 at 3). Her allegations state only that during her three encounters with Officer Pate, she arrived on scene, objected to his actions, and refused to "get back in her car." (Doc. 37 ¶¶ 1–3). Officer Pate responds that he had arguable probable cause to arrest Ms. Holman for obstruction of government operations on each of the three encounters. (Doc. 38 at 10; doc. 41 at 4–5); *see* Ala. Code § 13A-10-2(a)(1) ("A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, . . . [she i]ntentionally obstructs, impairs or hinders the administration of law or other governmental function.")

Ms. Holman points to no materially similar case or principle of law that puts Officer Pate on notice that her actions did not create arguable probable cause for obstruction of government operation. (*See* doc. 40 at 3–4). None of the cases she cites mention the Alabama statute. (*See id.*). Nor does she argue that Officer Pate's

conduct so obviously violated the Fourth Amendment that no prior law is needed. (*See id.*). Indeed, existing case law weighs in favor of granting Officer Pate qualified immunity. *See Garcia*, 75 F.4th at 1188–89; *Phillips v. Irvin*, 222 F. App'x. 928, 929 (11th Cir. 2007) (concluding that an officer had arguable probable cause when the plaintiff refused to "back off" during a traffic stop).[3] Accordingly, the court **WILL GRANT** Officer Pate's motion with respect to Count One.

    *ii.*    *Count Two*

To state a claim for First Amendment retaliation, Ms. Holman must show three elements: (1) "constitutionally protected speech"; (2) that Officer Pate's "retaliatory conduct adversely affected that protected speech"; and (3) "a causal connection exists between [Officer Pate's] retaliatory conduct and the adverse effect on [her] speech." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Ms. Holman again has not satisfied her burden to show that any alleged violation was clearly established. As a materially similar case, Ms. Holman relies on *Duran v City of Douglas*, 904 F.2d 1372 (9th Cir. 1990). In that case, a police officer initiated a traffic stop solely because the plaintiff made "obscene gestures toward him." *Id.* at 1377–78. But Ms. Holman's complaint does not connect Officer Pate's

---

[3] Although *Phillips* is an unpublished case, "non-binding persuasive authority can be used to indicate that a particular constitutional right is not clearly established." *Corbitt v. Vickers*, 929 F.3d 1304, 1319 n.14 (11th Cir. 2019)

actions to any criticisms or "obscene gestures." (*See* doc. 37 ¶¶ 8–14). So *Duran* does not help Ms. Holman show that the alleged conduct was clearly established.[4]

In response to the motion to dismiss, Ms. Holman argues that Officer Pate took these actions as retaliation for criticizing him. (Doc. 40 at 2–3). But those allegations do not appear in her complaint. (*See* doc. 37 ¶¶ 10–12); *see also Miccosukee Tribe of Indians v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (noting that "a plaintiff cannot amend [her] complaint through argument made in [her] brief in opposition to the defendant's motion for summary judgment.").

Accordingly, Ms. Holman has not satisfied her burden, and Officer Pate is entitled to qualified immunity. The court therefore **WILL GRANT** his motion with respect to Count Two.

### 2.    Mayor Bobbie White

Count Three alleges that Mayor White and the City of Brent were "deliberately indifferent" to Officer Pate's conduct. (Doc. 37 ¶¶ 16, 23). Mayor White moves to dismiss Count Three to the extent it seeks relief in her individual capacity. (Doc. 38 at 17). Because Mayor White moves to dismiss any individual claims, the court will assume without deciding that Count Three is brought against

---

[4] In addition to its factual differences, *Duran* cannot serve as a "materially similar" case because it is not a United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court decision. The court may consider out-of-circuit cases only when a plaintiff argues that the conduct obviously violates the Constitution. *Gilmore v. Georgia Dep't of Corr.*, 144 F.4th 1246, 1259–61 (11th Cir. 2025) (en banc).

Mayor White in her individual capacity. *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008) (noting that "[t]he main concern of a court in determining whether a plaintiff is suing defendants in their official or individual capacity is to ensure the defendants in question receive sufficient notice with respect to the capacity in which they are being sued").

Count Three fails to state a claim against Mayor White in her individual capacity. The factual allegations do not mention Mayor White nor describe any of her conduct. Because the complaint has no allegations about Mayor White's conduct, it does not state a claim against her under § 1983. *See Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

In response to the motion to dismiss, Ms. Holman asserts that Mayor White was "negligent, careless, and unskillful in the hiring, retaining, and training of defendant Pate, and that she was presented with facts supporting the allegations." (Doc. 40 at 4). But the allegations do not appear in the complaint, and as mentioned above, Ms. Holman cannot amend her complaint through briefing. *See Miccosukee Tribe of Indians*, 716 F.3d at 559. The court therefore **WILL GRANT** the motion with respect to Count Three against Mayor White in her individual capacity.

10

3.    City of Brent

Because Ms. Holman sues Officer Pate and Mayor White in their official capacities, she asserts all three counts against the City of Brent. *See Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

A local government cannot be liable under § 1983 based solely on *respondeat superior*. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Instead, a plaintiff must establish "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). To satisfy the second element, Ms. Holman has three options: "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the

11

municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* To establish a custom or policy, "it is generally necessary to show a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290 (quotation marks omitted). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Ms. Holman pleads only "isolated incidents" with Officer Pate. *See id.*; (*see also* doc. 37 ¶¶ 1–3, 10–12, 17). Viewing the factual allegations in Ms. Holman's favor, Officer Pate interacted with Ms. Holman five times over the course of two years, resulting in three formal arrests. Ms. Holman does not allege the City has a policy allowing officers to arrest individuals without probable cause. *See Sewell*, 117 F.3d at 489; *cf. Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) (holding that four incidents over multiple years were not sufficient to state a claim for supervisory liability under § 1983). And because she focuses solely on her interactions with Officer Pate, she does not allege sufficient facts for the court to reasonably infer the City has a "practice that is so settled and permanent that it takes on the force of law." *See id.*

Ms. Holman also alleges that Officer Pate "acted as a final policymaker," so his actions open the City to liability. (Doc. 37 ¶ 15). But this singular allegation is conclusory. *See Iqbal*, 556 U.S. at 678. Moreover, whether an individual is a final

12

policymaker is a question of law, determined by state and local law. *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). In towns in Alabama, only the mayor and the city council are vested with final policymaking authority. *See* Ala. Code § 11-43-81 ("The mayor shall be the chief executive officer, and shall have general supervision and control of all other officers."); *id.* § 11-43-43 ("All legislative powers and other powers granted to cities and towns shall be exercised by the council."); *id.* § 11-43-5 ("The council may provide for a . . . chief of police . . . and shall specifically prescribe their duties."). Accordingly, Officer Pate was not a final policymaker for *Monell* liability.

Lastly, Ms. Holman argues that "[i]nadequate training can rise to the level of a policy or custom." (Doc. 40 at 5). But Ms. Holman's complaint does not allege any facts or cause of action based on the City's failure to train Officer Pate. (*See generally* doc. 37). The court therefore **WILL GRANT** the City's motion and **WILL DISMISS** all claims against it.

4.    Outrage

All defendants move to dismiss any potential claim for the tort of outrage under Alabama law. (Doc. 38 at 17–20). But Ms. Holman's complaint does not contain a claim for outrage. Based on the heading and substantive allegations, Count Three alleges only a Fourth Amendment violation against Mayor White and the City. (*See* doc. 37 at 5–6). One paragraph nestled under that heading alleges Officer Pate's

conduct was "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." (*Id.* ¶ 21). But if that is an attempt to state an outrage claim, Ms. Holman "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Thus, the single paragraph does not "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* Because there is no outrage claim, the court **FINDS AS MOOT** the motion to the extent it seeks to dismiss an outrage claim

## III.   CONCLUSION

For the reasons above, the court **WILL GRANT** the defendants' motion and **WILL DISMISS** this case **WITH PREJUDICE**. (Doc. 38). The court **FINDS AS MOOT** the motion to the extent it seeks to dismiss an outrage claim.

**DONE** and **ORDERED** this April 15, 2026.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE